UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BEST LABEL COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>CUSTOM LABEL & DECAL, LLC, et al.,<br><br>    Defendants. | Case No. 19-cv-03051-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMMARY JUDGMENT**<br><br>Dkt. Nos. 181, 182, 191, 206, 207 |

On March 17, 2022, the Court heard argument on defendants' motion for partial summary judgment. Defendants seek summary judgment as to 7 out of 11 of plaintiff's claims, namely:

- Misappropriation of Trade Secrets (1st cause of action)
- Breach of Duty of Loyalty (2nd cause of action)
- Unlawful Interference w/ Prospective Economic Advantage (5th cause of action)
- Statutory Unfair Competition (6th cause of action)
- Violation of California Penal Code Section 502 (9th cause of action)
- Federal and common law trademark infringement (10th and 11th causes of action)

Having taken lengthy oral argument, considered the parties' briefs, and reviewed the substantial evidence filed in support thereof the Court hereby GRANTS in part and DENIES in part defendants' motion as detailed below.

**BACKGROUND**

Best Label Company, Inc. ("BLCI") was a label company based in Union City, California. Dkt. No. 1-1 ¶ 10.

In February 2018, negotiations began for the purchase of BLCI by Resource Label Group, LLC ("RLG"). Dkt. No. 182-2 at 321-323[1] (John Crammer Depo. Testimony). On November 15, 2018, RLG acquired BLCI through an asset purchase agreement ("the Acquisition"). Dkt. No. 181-5 (Asset Purchase Agreement Dated November 5, 2018). To complete the transaction, RLG formed plaintiff, Best Label Company, LLC ("BLC LLC" or plaintiff). Dkt. No. 191-2 at 14-15 (Opposition). A term of the Acquisition included that on November 14, 2018, when BLCI transferred its assets to BLC LLC, all BLCI employees would be terminated with the expectation that BLC LLC would extend employment offers to the terminated employees shortly thereafter ("the Termination Clause"). Dkt. No. 181-5 at 45 (Asset Purchase Agreement). All of the individual defendants, except defendant Daniel Crammer, were subject to the Acquisition's Termination Clause because, as discussed below, they were employed by BLCI when its assets were acquired.

The rehiring process of former BLCI employees involved extending formal offer letters to each former BLCI employee. Dkt. No. 181-5 at 45 (Asset Purchase Agreement) ("Purchaser or one of its Affiliates shall, effective as of the Closing Date, extend offers of employment to all actively employed employees of Seller engaged in the Business…"). The parties hotly dispute whether during this time, after the Acquisition but when individual defendants Mr. Gilkey, Mr. Cole, and Mr. McKean had not signed formal offer letters, the three of them were employees of BLC LLC. Dkt. No. 181-3 at 20-21[2] (MSJ); Dkt. No. 191-2 at 14-15[3] (Opposition).

The parties agree Daniel Crammer and others learned of the Acquisition prior to the

---

[1] For ease of reference, page number citations refer to the ECF branded number in the upper right corner of the page.

[2] "Although Plaintiff may claim Mr. McKean, Mr. Gilkey, and Mr. Cole 'implicitly accepted' a job with BLC LLC by pointing to income they received from BLC LLC, the income Mr. Cole, Mr. Gilkey, and Mr. McKean received was for the work they had performed for BLCI prior to BLCI's transfer of assets to BLC LLC. Importantly, BLC LLC was still negotiating with Mr. McKean, Mr. Gilkey, and Mr. Cole over issues related to their potential positions, including salary and other incentives. That clearly demonstrates that Mr. McKean, Mr. Cole, and Mr. Gilkey had not accepted any position at BLC LLC. Because none of the Individual Defendants were hired by BLC LLC, Individual Defendants had no relationship with BLC LLC that would give rise to a duty of loyalty."

[3] "Plaintiff hired BLCI's employees. Notably, **Gilkey, McKean, and Cole all continued employment**." (emphasis in original).

1    Acquisition's consummation and public announcement. Dkt. No. 182-2 at 28-29 (Daniel Crammer
2    Depo. Testimony). BLCI's Hayward, California competitor, defendant Custom Label & Design
3    LLC ("CLD"), also learned of the impending Acquisition well before it was consummated and took
4    steps to attract BLCI employees to come work for defendant CLD. Dkt. No. 1-1 ¶ 11; Dkt. No.
5    192-2 at 424-425 (Daniel Crammer Depo. Testimony).

6    Individual defendant Daniel Crammer worked for BLCI for over 10 years before his October
7    30, 2018 resignation, approximately two weeks prior to the Acquisition. Dkt. No. 182-2 at 7, 9-10
8    (Daniel Crammer Depo. Excerpts). Defendants admit "Mr. Crammer continued to work with BLCI
9    for a couple of weeks after he had technically left BLCI's employment to help keep the business
10   running and to assist with the transition." Dkt. No. 181-3 at 12 (MSJ); Dkt. No. 182-2 at 82-88
11   (Daniel Crammer Depo. Testimony). On October 31, 2018, CLD announced Dan Crammer as its
12   Vice President of Operations. Dkt. No. 191-7 at 348 (Internal CLD Email).

13   Individual defendant Travis Gilkey was employed by BLCI for close to 20 years prior to the
14   Acquisition. Dkt. No. 182-2 at 135-136 (Travis Gilkey Depo. Excerpts). On November 28, 2018,
15   Mr. Gilkey began working for defendant CLD after receiving a commission check and general
16   manager salary from BLCI and after "report[ing] to the Best Label facility" from "November 15,
17   2018 through November 28, 2018." Dkt. No. 182-2 at 141-145, 155-156 (Travis Gilkey Depo.
18   Excerpts).

19   Individual defendant Scott McKean worked for BLCI for more than seven years before the
20   Acquisition. Dkt. No. 182-2 at 226-228. On November 26, 2018, Mr. McKean began work at
21   defendant CLD after receiving his final check for his work at BLCI. Dkt. No. 182-2 at 304 (Scott
22   McKean Depo. Testimony).

23   Individual defendant Gareth Cole joined BLCI in May 2018 and had been with the company
24   for approximately 6 months prior to the Acquisition. Dkt. No. 182-2 at 195-196 (Gareth Cole Depo.
25   Testimony). On November 20, 2018, Mr. Cole received a final payment from BLCI and began
26   working at defendant CLD. Dkt. No. 182-2 at 213, 217 (Gareth Cole Depo. Testimony).

27
28

### I. Facts re Misappropriation of Trade Secret Allegations

Plaintiff alleges defendants stole four categories of trade secrets, namely: (1) information about BLC LLC's customers and prospective customers; (2) information about BLC LLC's marketing and strategic planning documents, (3) Information about BLC LLC's label making processes specific to customers, and (4) Information regarding salary and compensation packages for its employees. Defendants do not seek summary judgment on category (1) and plaintiff states its misappropriation of trade secret claim "does not depend on the misappropriation of marketing and strategic planning documents," category (2). Dkt. No. 191-2 at 32 (Opposition). Therefore, for the purposes of this motion, the only categories for the Court to analyze are (3) and (4).

### II. Facts re Trademark Infringement Allegations

The parties do not dispute that, during his employment with BLCI, defendant Scott McKean created and used the "Beer Labels Done Right" logo and "Beer Labels Done Right" graphic ("BLDR Trademarks"). Dkt. No. 182-2 at 229-230, 234-235, 236-238, 243-246 (Scott McKean Depo. Testimony). It is also undisputed that neither BLC LLC nor RLG has used the BLDR Trademarks since Mr. McKean left the company in 2018; indeed, plaintiff's counsel admitted as much during the March 17, 2022 hearing on the instant motion.

Mr. McKean continued to use BLDR Trademarks in his signature line associated with his email address at CLD, simply removing the text reference to Best Label from the design. Dkt. No. 182-3 at 110 (November 29, 2018 email showing Scott McKean using BLDR Trademark on his email signature while working at CLD). Days after leaving BLCI, Mr. McKean filed a U.S. Trademark Application, Serial No. 88214311, claiming ownership of the BLDR Trademarks, and contending his first use was on November 1, 2015. Dkt. No. 182-2 at 247 (Scott McKean Depo. Testimony); Dkt. No. 191-8 at 282 (Trademark Application Principal Register filed on December 3, 2018 naming Scott McKean as "Owner of Mark"). In that filing, Mr. McKean admitted the BLDR trademark was created and used during his employment with BLCI. Dkt. No. 191-8 at 282 (Trademark Application Principal Register listing the mark's "First Use In Commerce Date" as November 1, 2015 – when Mr. McKean was working for BLCI).

**LEGAL STANDARD**

Summary judgment is proper if "the movant shows there is no genuine dispute [of] material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove that which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

In deciding summary judgment, the court must view evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a summary judgment motion. *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979). The evidence parties present must be admissible. Fed. R. Civ. P. 56(c).

**DISCUSSION**

I. **Claims Defendants Allege are Superseded by CUTSA**

   A. **The Second, Fifth, and Sixth Causes of Action are Not Superseded by California's Uniform Trade Secret Act ("CUTSA")**

Defendants argue the second, fifth, and sixth causes of action, for breach of duty of loyalty, unlawful interference with prospective economic advantage, and statutory unfair competition,

5

respectively, are superseded by CUTSA. While it is true that CUTSA can supersede other claims, it only does so if the claim(s) are "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc*., 171 Cal. App. 4th 939, 958 (2009) (internal citation omitted).

Plaintiff argues these claims are *not* premised upon it trade secret allegations. Rather, plaintiff argues it premises these claims on defendants' alleged statements made to divert business to plaintiff's competitor, defendant CLD, while the individual defendants still worked for plaintiff. Dkt. No. 191-7 at 179[4], 182-183[5], 184-189 (Cole Depo. Testimony); Dkt. No. 191-7 at 610-611[6] (Gilkey Depo. Testimony); Dkt. No. 191-7 at 569-578[7] (Exhibit from McKean Depo.); Dkt. No. 191-7 at 37[8] (Exhibit from Daniel Crammer Depo.). Plaintiff also premises these causes of action upon defendants' alleged solicitation of BLCI/BLC LLC employees to join its competitor, defendant CLD, while defendants were still employed by BLCI/BLC LLC. Dkt. No. 191-7 at 40[9] (Exhibit from Daniel Crammer Depo.). These allegations may be tangential to the CUTSA claim, and may very well be unsuccessful at trial. But they stand as independent claims, supported by alleged facts beyond misappropriation of trade secrets, and therefore are not superseded by CUTSA.

---

[4] Mr. Cole testified he gave a business opportunity to CLD on November 13, 2018 (prior to the Acquisition).

[5] Mr. Cole testified he approached CLD about a project for a customer on or before November 16, 2018, when plaintiff argues Mr. Cole was employed by plaintiff.

[6] Mr. Gilkey admitted he began checking his CLD email and communicating with CLD about business and customers' orders on November 24, 2018 – four days prior to when he officially started working for CLD and during the period of time plaintiff alleges he was still plaintiff's employee.

[7] Email chain starting on November 26, 2018 between Scott McKean and a former BLCI customer about moving their business over to CLD.

[8] October 19, 2018 email sent from CLD representative to Daniel Crammer negotiating Mr. Crammer's compensation from CLD while he was still working for BLCI. Specifically, CLD was promising Mr. Crammer an incentive bonus if his "former customers" buy from CLD.

[9] Email chain spanning October 18-October 20, 2018 between Daniel Crammer and CLD representative. At this time Mr. Crammer was still employed by BLCI (his last day was October 30, 2018). The CLD representative informs Mr. Crammer the representative is "chipping away" at recruiting then BLCI employee Travis Gilkey. Mr. Crammer responds with "Very cool! I'll keep chipping from my end too! I think we'll be yelling 'timber' soon."

### B. The Ninth Cause of Action for Violation of California Penal Code §502 Is Superseded by CUTSA

California Penal Code section 502, the Comprehensive Computer Data Access and Fraud Act, imposes liability on any person who "knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network . . . ." Cal. Penal Code § 502(c)(2). Defendants argue the §502 claim is preempted by plaintiff's CUTSA claim because both causes of action involve the exact same nucleus of facts. Dkt. No. 181-3 at 25 (MSJ). Section 502(c)(2) has two requirements: (1) the defendant knowingly accesses a computer system; and (2) without permission takes, copies, or makes use of the data therein.

Plaintiff devoted two paragraphs in its opposition to this issue and failed to identify any evidence showing how its §502 claim differs from its CUTSA claim. Dkt. No. 191-2 at 26-27 (Opposition). In highly similar instances, courts have found the CUTSA claim supersedes the §502 claim. *Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2017 U.S. Dist. LEXIS 29183, at *11 (N.D. Cal. Mar. 1, 2017). In the *Henry Schein* case, with facts strikingly similar to the case at bar, Judge Tigar found:

> HSI alleges that Cook knowingly accessed HSI's password-protected computer system after she terminated her employment, which then enabled her to copy and make use of HSI's trade secrets. HSI cannot plausibly allege the second 'use' element of section 502(c)(2) without relying on facts from its CUTSA claim. Therefore, the CUTSA preempts HSI's section 502 claim.

*Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2017 U.S. Dist. LEXIS 29183, at *13 (N.D. Cal. Mar. 1, 2017). Likewise, plaintiff cannot allege the second "use" element without relying on facts from its CUTSA claim. Indeed, the examples plaintiff gives in its opposition of alleged §502 violations are the exact conduct underlying its CUTSA claim. See Dkt. No. 191-2 at 27[10] (Opposition). As such, the Court finds plaintiff's §502 claim is superseded by its CUTSA claim and therefore GRANTS summary judgment as to the ninth cause of action.

---

[10] Plaintiff's Opposition states: "Individual Defendants clearly abused their access by using data on Plaintiff's **computer system** for competition against Plaintiff. Indeed, McKean used information **in Plaintiff's computer system** to create a Google Doc with over 1,150 lines of customer information for his reference at Custom Label. Cole testified that he **took data from Plaintiff's computer system** and used it to divert customers to Custom Label. There are clearly genuine issues regarding Defendants' **illicit use of the data on Plaintiff's computer system**." (internal citations omitted) (emphasis added).

7

## II. First Cause of Action – Misappropriation of Trade Secrets

Plaintiff alleges defendants stole four categories of trade secrets, namely: (1) information about BLC LLC's customers and prospective customers; (2) information about BLC LLC's marketing and strategic planning documents, (3) Information about BLC LLC's label making processes specific to customers, and (4) Information regarding salary and compensation packages for its employees. Defendants only seek summary judgment on categories 2-4 arguing plaintiff has "not sufficiently and particularly described, or otherwise evidenced, what these supposed trade secrets entail that would give Defendants any indication of what trade secret is at issue." Dkt. No. 181-3 at 28 (MSJ). In its opposition, plaintiff states its "claim for misappropriation of trade secrets does not depend on misappropriation of marketing and strategic planning documents." Dkt. No. 191-2 at 32 (Opposition). Therefore, the Court need only analyze categories 3 and 4.

For categories 3 and 4, plaintiff has not differentiated the alleged trade secrets from general knowledge those skilled in the trade would have. Indeed, plaintiff's entire opposition to these two categories constitutes one paragraph, stating:

> Defendants claims [sic] that Plaintiff does not have protectable label making processes or salary and compensation information that can be protected as trade secrets. All of this information is identifiable and was kept secret and secured on Plaintiff's password-protected computer systems. Plaintiff's salary information is kept secret. Plaintiff's label making processes included specific configurations and label constructions unique to each customer. Defendants' feigning ignorance of which information they stole is remarkably unconvincing.

Dkt. No. 191-2 at 32 (Opposition). Plaintiff does not attempt to explain what purported trade secret "unique to each customer" is at issue. Plaintiff does not describe the alleged trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge to those persons who are skilled in the trade." *Mattel, Inc. v. MGA Ent'mt, Inc.*, 782 F. Supp. 2d 911, 967 (C.D. Cal. 2011) (quoting *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1453 (2002)). Defendants put forth evidence showing label making processes are essentially similar and defendants garnered this expertise from many years of experience in the industry. Dkt. No. 182-2 at 11-21 (Daniel Crammer Depo. Testimony re specifics of label making). Plaintiff did not refute this evidence or otherwise provide any conflicting on this point – rather, plaintiff simply wrote

8

the paragraph above. Finally, it is axiomatic that simply because information is password protected, that does not automatically render it a trade secret. California Civil Code § 3426.1(d)(2) does require secrecy to establish something as a trade secret, but it also requires the trade secret to be something from which the holder can derive independent economic value "from not being generally known." See §3426.1(d)(2). Plaintiff does not offer any evidence as to the latter or refute defendants' evidence that the alleged trade secrets are actually generally known information to those skilled in the trade of label making.

As such, summary judgment is GRANTED with respect to plaintiff's misappropriation of trade secret claims based on categories 2, 3, and 4 for information about BLC LLC's marketing and strategic planning documents, information about BLC LLC's label making processes specific to customers, and information regarding salary and compensation packages for its employees, respectfully.

### III. Second Cause of Action: Duty of Loyalty

"The elements of a cause of action for breach of a duty of loyalty . . . are as follows: (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007) (citation omitted). California courts have held that "[a]n employee does not breach his duty of loyalty by preparing to compete with his employer." *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 719 (2008) (citations omitted).

The parties' arguments focus on elements (1) and (2) – whether the individual defendants owed a duty to BLCI/BLC LLC and, if there was a duty, whether it was breached.

#### A. Existence of a Duty of Loyalty

Defendants powerfully argue Mr. Gilkey, Mr. Cole, and Mr. McKean were never employees of BLC LLC because they were terminated pursuant to the Asset Purchase Agreement and never signed employment agreements with BLC LLC; therefore, they did not owe BLCI a duty as of November 14, 2018 when the Termination Clause went into effect and never owed a duty to BLC

9

1  LLC, a company defendants argue they never worked for. Dkt. No. 181-3 at 20-21 (MSJ). While
2  the Court finds defendants' argument regarding the Termination Clause compelling, plaintiffs have
3  put forth enough evidence to create an issue of fact to defeat summary judgment. As discussed
4  above, Mr. McKean, Mr. Cole, and Mr. Gilkey all continued going into the office and received pay
5  checks *after* the asset purchase was completed. e.g., Dkt. No. 182-2 at 143[11] Travis Gilkey Depo
6  Testimony); Dkt. No. 182-2 at 304[12] (Scott McKean Depo. Testimony); Dkt. No. 182-2 at 213, 217[13]
7  (Gareth Cole Depo. Testimony). While the Court finds defendants' argument persuasive, plaintiff
8  has carried its burden to create a dispute of fact as to whether Mr. Gilkey, Mr. Cole, and Mr. McKean
9  could have been employed by BLC, LLC and therefore owed BLC LLC a duty.

10  With respect to Mr. Crammer, it is undisputed he owed BLCI a duty of loyalty prior to his
11  resignation on October 30, 2018.

### B. Breach of the Duty of Loyalty

As discussed above, plaintiff has created disputes of fact regarding whether the individual defendants, while still working for plaintiff, diverted business opportunities and/or improperly solicited BLCI/BLC LLC employees to work for defendant CLD. The Court believes this cause of action is a very close call and finds plaintiff has barely met its burden of showing material disputes of fact.

As such, summary judgment is DENIED as to the second cause of action for breach of duty of loyalty.

---

[11] Mr. Gilkey testified he received a paycheck from Resource Label Group (BLC LLC) between November 15, 2018 – November 28, 2018 (after the Acquisition closed) at least in part for his "general manager salary." This contradicts defendants' argument at the hearing that all payments to the individual defendants after November 14, 2018 were merely commission payments.

[12] Scott McKean deposition testimony confirming he began work for CLD on November 26, 2018, after receiving his final check for his work at BLCI.

[13] Gareth Cole deposition testimony confirming he received a final payment from BLCI on November 20, 2018, and began working at defendant CLD.

**IV.     Tenth and Eleventh Causes of Action: Trademark Infringement**

To establish a claim for trademark infringement under 15 U.S.C. § 1125(a), plaintiff must prove: (1) that Plaintiff owns a valid and protectable trademark; and (2) that Defendants' use of the mark is likely to cause consumer confusion. *See Airs Aromatics, LLC v. Victoria's Secret Store Brand Mgmt., Inc*., 744 F.3d 595, 599 (9th Cir. 2014).  The Lanham Act identifies abandonment as an affirmative defense to a trademark infringement claim, defining "abandonment as: (1) discontinuance of trademark use *and* (2) intent not to resume such use." *Electro Source, Ltd. Liab. Co. v. Brandess-Kalt-Aetna Grp., Inc*., 458 F.3d 931, 935 (9th Cir. 2006) (emphasis in original); 15 U.S.C. § 1127.  Three consecutive years of non-use is "prima facie evidence of abandonment." 15 U.S.C. § 1127.

Plaintiff argues defendants' abandonment argument fails for two reasons: (1) plaintiff intends to use the mark in the future and (2) plaintiff has not used the mark only because it has been "stymied by [defendant Scott] McKean's contested ownership" of the trademark rights.  Dkt. No. 191-2 at 22 FN 98 (Opposition).  However, plaintiff does not set forth any evidence that it intends to use the trademark in the future.  See Dkt. No. 191-2 20-22 (Opposition).  Further, there has been nothing stopping plaintiff from using the mark if it wanted to.  It seems plaintiff simply has not used it and plaintiff's counsel admitted as much during the March 17, 2022 hearing on the instant motion.  There is no dispute Mr. McKean created the trademark during his employment with plaintiff well before 2018.  While Mr. McKean disabled the social media accounts and website using the mark, plaintiff could have easily created new accounts or used the mark in other contexts.  There is no evidence plaintiff has done so.

As such, summary judgment is GRANTED with respect to the tenth and eleventh causes of action.[14]

---

[14] The parties' motions to file under seal are GRANTED. See Dkt. Nos. 181, 191, 206.

Plaintiff's motion to supplement the record is DENIED. Dkt. No. 207. The motion to supplement the record was filed by plaintiff over a month after defendants' reply brief was filed and nearly two months after plaintiff's opposition was filed. All of the evidence plaintiff seeks to submit in the supplemental record was available to plaintiff when it submitted its opposition. The supplemental evidence is untimely and will not be considered.

# CONCLUSION

For the foregoing reasons and for good cause shown, the Court rules as follows:

First Cause of Action: Misappropriation of Trade Secrets

1. Information about BLC LLC's customers, prospective customers – NOT at issue. Summary judgment is NOT granted.
2. Information about BLC LLC's marketing and strategic planning documents – summary judgment is GRANTED.
3. Information about BLC LLC's label making processes specific to customers – summary judgment is GRANTED.
4. Information regarding salary and compensation packages for its employees – summary judgment is GRANTED.

Second Cause of Action: Breach of Duty of Loyalty – summary judgment is DENIED

Fifth Cause of Action: Unlawful Interference with Prospective Economic Advantage – summary judgment is DENIED.

Sixth Cause of Action: Statutory Unfair Competition – summary judgment is DENIED.

Ninth Cause of Action: Violation of Penal Code Section 502 – summary judgment is GRANTED.

Tenth/Eleventh Causes of Action: Trademark Infringement – summary judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: April 20, 2022

SUSAN ILLSTON
United States District Judge