UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BEST LABEL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CUSTOM LABEL & DECAL, LLC, et al.,<br><br>Defendants. | Case No. 19-cv-03051-SI   (VKD)<br><br>**ORDER DENYING MOTIONS FOR SANCTIONS**<br><br>Re: Dkt. Nos. 144, 145, 146, 147, 164 |

Plaintiff The Best Label Company, LLC's ("BLC") moves for an order of sanctions against defendants Customer Label & Decal, LLC ("CLD"), Daniel Crammer, Scott McKean, Gareth Cole, and Travis Gilkey for spoliation of evidence. Dkt. Nos. 144, 145, 146, 147, 164. Specifically, BLC asks the Court to order that the jury be instructed that defendants failed to comply with their obligations to preserve relevant evidence, that relevant evidence was destroyed after the duty to preserve arose, and that the evidence lost was favorable to BLC. *See, e.g.*, Dkt. No. 164 at 16. In addition, BLC seeks monetary sanctions against all defendants, production of additional devices and accounts for inspection, and production of CLD's litigation hold communications. *See, e.g.*, *id.* at 17.

The Court held a hearing on BLC's motions for sanctions on January 18, 2022. Dkt. No. 190. Having reviewed the parties' submissions and arguments made at the hearing, the Court denies the motions.

**I.   BACKGROUND**

Individual defendants McKean, Cole, Gilkey and Crammer are former employees of plaintiff BLC, a custom label-making company that has since been acquired by Resource Label Group ("RLG"). Dkt. No. 211 at 1-2. Defendant CLD, BLC's competitor, learned of RLG's

interest in acquiring BLC in October 2018 and took steps to encourage BLC's employees to join CLD. Dkt. No. 1-1 ¶ 3; Dkt. No. 211 at 2-3.

Mr. Crammer resigned from BLC on October 30, 2018 and began working for CLD the next day. Dkt. No. 211 at 3. On November 29, 2018, BLC's counsel sent CLD a letter saying that they were investigating potential breaches of contract by Mr. Crammer and notifying CLD of Mr. Crammer's obligations to BLC. Dkt. No. 174-1, Ex. 2. The letter asked CLD to refrain from using or disclosing BLC's confidential information and advised CLD of its "immediate obligation to take all steps to preserve all evidence related to the dispute." *Id.* at 3. BLC's counsel also sent a letter dated November 29, 2018 to Mr. Crammer advising him that BLC believed he was in breach of his obligations to BLC and asking him to immediately cease his "improper conduct" and agree to comply fully with his obligations in the future. Dkt. No. 147-1, Ex. 5. In addition, the letter asked Mr. Crammer to certify that he had returned and not retained BLC's confidential information. *Id.* at 3.

Mr. McKean, Mr. Cole, and Mr. Gilkey left BLC and began working for CLD in late November 2018. Dkt. No. 211 at 3. In early December 2018, CLD's counsel sent letters addressed to these individual defendants warning them against violations of their contractual obligations to BLC and other improper conduct and demanding that they return and not retain BLC's confidential information. *See* Dkt. No. 144-1, Ex. 5; Dkt. No. 145-1, Ex. 9; Dkt. No. 146-1, Ex. 7. However, it appears that the letter addressed to Mr. Gilkey was sent to the wrong address and he never received it. Dkt. No. 168-1 ¶ 5; Dkt. No. 168-2 at 3–6.

By early December 2018, CLD had retained counsel. *See* Dkt. No. 174-1, Ex. 3. On January 25, 2019, CLD advised its employees to preserve evidence that might be relevant to a dispute with BLC, although the record does not reflect the specific preservation instructions provided. Dkt. No. 166 at 9. BLC filed a complaint against defendants on May 3, 2019. Dkt. No. 1-1.

BLC contends that defendants failed to preserve a significant amount of electronically stored information ("ESI"). BLC says that CLD employee Elise Gilmer deleted multiple BLC files in December 2018 through early 2019. Dkt. No. 164 at 9, 12-13. BLC says that Mr.

1   Crammer downloaded approximately 1,800 BLC files to an SD card in October 2018, which he
2   later deleted "at some point." Dkt. No. 147 at 11. BLC says that on November 29, 2018, Mr.
3   Crammer also deleted nearly 57,000 documents from a company-issued laptop and a second
4   laptop computer. *Id.* at 8-10. BLC also says that when Mr. Crammer purchased a new cell phone
5   in 2019 he failed to preserve information on his old cell phone. *Id.* at 10-11. BLC says that Mr.
6   McKean and Mr. Gilkey also deleted multiple BLC files from their Apple MacBook Pro
7   computers during the same time period. Dkt. No. 144 at 8-9; Dkt. No. 146 at 11, 14-15. In
8   addition, BLC says that Mr. McKean downloaded over 200 files from BLC to an external USB
9   drive, but deleted these files from the USB drive before turning that device over to a forensic
10  examiner on January 30, 2019. *Id.* at 9. BLC says that Mr. Cole downloaded more than 16,000
11  files from BLC to his Seagate external hard drive, but deleted these files "at some point" before
12  turning the device over to a forensic examiner. Dkt. No. 145 at 2. Finally, BLC says that Mr.
13  Gilkey also deleted BLC files from his Seagate external hard drive "at the end of 2018 and into
14  early 2019." Dkt. No. 146 at 15. As to all defendants, BLC says additional devices and accounts
15  were never turned over for inspection during the litigation. *See* Dkt. No. 144 at 9-10; Dkt. No.
16  145 at 3; Dkt. No. 146 at 11-12; Dkt. No. 147 at 11; Dkt. No. 164 at 10.

## II.     LEGAL STANDARD

A party's obligation to preserve evidence for use in litigation arises when litigation is pending or becomes "reasonably foreseeable." *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1345–46 (Fed. Cir. 2011) (applying Ninth Circuit law); *Apple, Inc. v. Samsung Electronics Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012). "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011); *see also Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2018 WL 646701, at *15 (N.D. Cal. Jan. 30, 2018). The mere existence of a potential claim or the distant possibility of litigation are insufficient. *Hynix*, 645 F.3d at 1346. However, litigation need not be "imminent" for it to be reasonably foreseeable. *Id.*

With respect to ESI, sanctions may be warranted when "electronically stored information

3

that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and [the information] cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  If a court finds that the loss of information has prejudiced the moving party, it may order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).  If a court finds that the offending party "acted with the intent to deprive another party of the information's use in the litigation," the court may require an adverse evidentiary presumption, dismiss the case, or enter default judgment.  Fed. R. Civ. P. 37(e)(2).[1]

## III. DISCUSSION

The Court first considers when litigation as to each defendant became "reasonably foreseeable," such that each had an obligation to take reasonable steps to preserve evidence for use in litigation.  Next, the Court considers whether defendants destroyed relevant evidence after they had an obligation to preserve it, and whether they failed to take reasonable steps to preserve such evidence.  Finally, the Court considers whether BLC has been prejudiced by any such destruction or failure to preserve evidence.

### A. Duty to Preserve Evidence

BLC argues that all defendants' duty to preserve evidence was triggered in early December 2018 when they received letters from BLC's counsel and after CLD retained counsel.  *See* Dkt. No. 171 at 2-3 (McKean – Dec. 6, 2018); Dkt. No. 172 at 1-3 (Cole – Dec. 5, 2018); Dkt. No. 173 at 6-7 (Gilkey – Dec. 5, 2018); Dkt. No. 174 at 7 (CLD and Mr. Crammer – Dec. 5, 2018). Defendants respond that none of BLC's letters put them on notice that litigation was reasonably foreseeable because each letter explained the steps necessary to *avoid* litigation.  Dkt. No. 166 at 6. Moreover, only the letters to Mr. Crammer and CLD alleged that there had been any improper

---

[1] The Court concludes that Rule 37(e), as amended in 2015, displaces the Court's inherent authority to award sanctions with respect to ESI. *See Waymo*, 2018 WL 646701, at *14; *accord Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018); *see also* Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 Amendment (Rule 37(e) "authorizes and specifies measures a court may employ if [ESI] that should have been preserved is lost, and specifies the findings necessary to justify these measures.  It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used.").

4

conduct; the letters to Messrs. McKean, Cole, and Gilkey did not allege any violations, but only contained reminders of those defendants' obligations to BLC. Defendants argue that they had no duty to preserve evidence before January 25, 2019, at the earliest, when CLD issued a "litigation hold" notice to its employees asking them to preserve evidence that might be relevant to a dispute with BLC. *Id.* at 9. Defendants do not explain what caused CLD to issue the hold notice or why it did not issue a notice earlier. In any event, the date defendants advocate is more than three months before BLC filed its complaint.

The Court concludes that litigation involving BLC, CLD, and Mr. Crammer was reasonably foreseeable as of December 5, 2018, based on the letters BLC's counsel sent to CLD and Mr. Crammer. These letters included specific allegations that Mr. Crammer breached his obligations to BLC and referred explicitly to potential litigation regarding that breach. In addition, the letter to CLD expressly requested that CLD "take all steps to preserve all evidence related to this dispute." Dkt. No. 174-1, Ex. 2 at 3. Defendants are correct that the letter to Mr. Crammer did not demand that he preserve information, but only asked him to certify that he had already "returned" and "not retained" any BLC confidential information. However, the Court is not persuaded that this communication relieved Mr. Crammer of a duty to preserve evidence if litigation was nevertheless reasonably foreseeable at that time. Indeed, Mr. Crammer attests that, upon receiving BLC's counsel's letter, he "provided [his] electronic devices that [BLC] contended were at issue to Custom Label which thereafter maintained the devices in quarantine." Dkt. No. 165 ¶ 2. This testimony suggests that Mr. Crammer in fact understood that litigation with BLC was reasonably foreseeable.

The letters to Messrs. McKean, Cole, and Gilkey are different. These letters do not assert that any of these individuals violated any law or breached any obligation to BLC. Rather, in these letters, BLC's counsel reminds these individuals of their obligations to BLC, warns them against use or disclosure of BLC confidential information, and asks that they return any such information in their possession. Dkt. No. 144-1, Ex. 5 (McKean); Dkt. No. 145-1, Ex. 9 (Cole); Dkt. No. 146-1, Ex. 7 (Gilkey). Moreover, it appears undisputed that Mr. Gilkey never received the letter addressed to him. *See* Dkt. No. 168-1 ¶ 5; Dkt. No. 168-2 at 3–6. These letters did not create a

5

1  duty to preserve evidence in anticipation of litigation. *See, e.g., Stevenson v. City & Cnty. of San*
2  *Francisco,* No. C-11-4950 MMC, 2015 WL 6177363, at *4 (N.D. Cal. Oct. 21, 2015) ("Unlike
3  demand letters, threats of litigation, or other communications in which a party states an intent to
4  pursue legal action, the subject complaint letters do not implicitly or expressly threaten
5  litigation.").

6  BLC argues that because *CLD* had a duty to preserve documents relevant to litigation with
7  BLC concerning Mr. Crammer, it likewise had a duty to preserve documents relevant to potential
8  disputes concerning BLC's other former employees as well. The authority on which BLC relies
9  for this proposition does not support its thesis. Certainly, CLD's obligation to preserve documents
10 may require it to instruct employees regarding matters of preservation, to the extent the
11 foreseeable litigation involves the conduct of those employees or information in their possession.
12 *See Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13cv1946-LAB (WVG), 2015 WL
13 4077732, at *3 (S.D. Cal. Jul. 6, 2015) ("The obligation to retain discoverable materials is an
14 affirmative one; it requires that the agency or corporate officers having notice of discovery
15 obligations communicate those obligations to employees in possession of discoverable materials.")
16 (citation omitted). But it does not follow that Messrs. McKean, Cole, and Gilkey independently
17 had a duty to preserve documents, simply because their employer may have had such a duty.
18 Moreover, it is not clear whether the letters addressed to Messrs. McKean, Cole, and Gilkey were
19 ever shared with CLD, and even if they had been, as noted above, the Court agrees with
20 defendants that those letters do not support a finding that litigation concerning BLC and these
21 individuals was reasonably foreseeable as of early December 2018.

22 With respect to Mr. McKean, in its reply, BLC offers evidence of additional
23 communications with him and with CLD that it contends give rise to a duty to preserve relevant
24 evidence no later than December 18, 2018, based on an exchange of letters concerning Mr.
25 McKean's efforts to register a trademark. *See* Dkt. No. 173-3, Ex. 1; Dkt. No. 174-3, Exs. 4, 6.
26 This evidence was not included in any of BLC's opening motions against any defendant. It was
27 cited for the first time in declarations appended to BLC's replies to *Mr. Gilkey's* opposition and to
28 CLD's opposition. Dkt. No. 173-3; Dkt. No. 174-4. Defendants object to the Court's

6

1  consideration of this reply evidence on the ground that it could have and should have been cited in
2  BLC's opening motions. Dkt. No. 175 at 3–4. In the alternative, defendants seek leave to file a
3  sur-reply contesting the significance of this reply evidence. *Id*. at 5 n.1. Defendants' objection is
4  well-taken, and the Court does not consider the additional reply evidence regarding Mr. McKean.
5  Moreover, the Court notes that the presiding judge recently dismissed BLC's trademark
6  infringement claims on summary judgment, making any spoliation of evidence relating to those
7  claims no longer grounds for sanctions. *See* Dkt. No. 211 at 11.

8        Accordingly, for purposes of BLC's motions seeking spoliation sanctions, the Court
9  concludes that CLD and Mr. Crammer had a duty to preserve evidence concerning reasonably
10 foreseeable litigation with BLC as of December 5, 2018, but that BLC has not shown that Messrs.
11 McKean, Cole, and Gilkey had an independent duty to preserve evidence concerning reasonably
12 foreseeable litigation against them before January 25, 2019.

13       **B.**     **Reasonable Steps to Preserve Relevant Evidence**

14       Spoliation concerns the preservation of evidence for use in litigation. The duty to preserve
15 evidence does not extend to every bit of ESI in a defendant's possession, but is limited to evidence
16 likely to be relevant to a claim or defense as to which litigation is reasonably foreseeable. *See*
17 *Oracle Am., Inc. v. Hewlett Packard Enter. Co*., 328 F.R.D. 543, 550 (N.D. Cal. 2018) ("[E]ven
18 when a claim is anticipated, the full scope of preservation may not be reasonably foreseeable.").
19 Moreover, Rule 37(e) requires only that a party take "reasonable steps" to preserve such evidence.

20       In its motions for sanctions, BLC focuses on lists of files it contends were deleted from
21 devices submitted by defendants for forensic examination as well as deposition testimony
22 purportedly establishing that no CLD employee was instructed to preserve evidence and that CLD
23 non-party employee Elise Gilmer deleted files from her work computer. Dkt. No. 164 at 7–10;
24 Dkt. No. 144 at 8–9; Dkt. No. 145 at 6; Dkt. No. 146 at 14–15; Dkt. No. 147 at 9–11. In addition,
25 BLC contends that the individual defendants have several accounts and devices that were never
26 disclosed or searched. Dkt. No. 144 at 9–10 (McKean); Dkt. No. 145 at 3 (Cole); Dkt. No. 146 at
27 11–12 (Gilkey); Dkt. No. 147 at 11 (Crammer).

28       In response, defendants say that they took reasonable steps to preserve ESI they believed

United States District Court
Northern District of California

1    might be relevant to a dispute with BLC.  Mr. Ho-Tseung, CEO of CLD, attests that the image
2    files Ms. Gilmer is charged with having deleted are image files from customers, and not BLC
3    confidential information, that the files simply could not be maintained on CLD's servers because
4    they take up too much space, and that CLD had no reason to anticipate these files would need to
5    be preserved in any event.  Dkt. No. 116-3 ¶¶ 4-12.  In addition, he says that many of the files
6    BLC claims were deleted from Ms. Gilmer's computer have been produced from other CLD
7    sources.  *Id.* ¶ 3.
8         Mr. Crammer says that upon receipt of BLC's counsel's letter, he provided his work-
9    related electronic devices to CLD so that they could be quarantined and later forensically imaged.
10   Dkt. No. 165 ¶ 2.  He also says that he turned in his work cell phone to BLC on his last day of
11   employment, so it was not in his possession on the date BLC claims it was "wiped."  *Id.* ¶ 4.  He
12   attests that the only information he or his wife deleted from his electronic devices or storage
13   accounts were personal photos and communications.  *Id.* ¶¶ 5-9.
14        Mr. McKean does not dispute that he removed images of the "Beer Labels Done Right"
15   trademark from Facebook and Instagram, as BLC claims, but he explains that he did this in
16   response to BLC's demand that he do so.  Dkt. No. 169 at 2.  Mr. McKean notes that many of the
17   files BLC claims he did not preserve are "autorecovery" files that exist only temporarily and are
18   automatically overwritten when a file is saved.  Dkt. No. 169 at 3.  Finally, he explains that he did
19   not suspend the "private" setting for his internet browsing history because he did not believe that it
20   was necessary to preserve his browsing history as evidence for use in litigation.  *Id.* at 3-4; Dkt.
21   No. 169-1 ¶ 5.  He denies deleting any other files containing confidential BLC information, and
22   contends that he generally deleted only files that are publicly available images or personal photos.
23   Dkt. No. 169 at 2.
24        Mr. Cole also says that many of the files BLC claims he did not preserve are
25   "autorecovery" files that exist only temporarily and are automatically overwritten when a file is
26   saved.  Dkt. No. 167 at 2.  He argues that the other files BLC claims were deleted from his work
27   computer concern customers that are not at issue in the case, or that the files have already been
28   produced from another source.  *Id.* at 2-3.  Likewise, Mr. Cole explains that the files BLC claims

were deleted from a Seagate external hard drive were copied and preserved on a CLD computer that was quarantined for later forensic examination. *Id.* at 3; Dkt. No. 167-1 ¶¶ 5-6.

Mr. Gilkey argues that most of the files BLC claims were deleted from his work computer and a Seagate hard drive concern customers that are not at issue in the case, were created after he left BLC's employ, or have already been produced from some other source. Dkt. No. 168 at 2-4; Dkt. No. 168-1 ¶¶ 7, 11. Mr. Gilkey acknowledges deleting BLC-related files from a home computer "upon [his] departure from BLC" so that his son could use that home computer for schoolwork. Dkt. No. 168-1 ¶ 10. He argues that at the time he had no obligation to preserve these documents because he had no notice of any foreseeable litigation with BLC. Dkt. No. 168 at 3, 4-5.

BLC has presented evidence that all defendants deleted at least some files, but its showing is insufficient in two key respects. First, BLC has not shown that defendants' alleged failure to preserve specific files occurred after each had a duty to do so. Second, BLC has not shown that defendants failed to take reasonable steps to preserve particular files or categories of files that are likely to be relevant to litigation that was then reasonably foreseeable. Instead, BLC merely cites files identified by the forensic examiner as missing or deleted, without tying any of those files to a claim or defense or to the time period during which each defendant had a duty to preserve evidence. More importantly, BLC does not respond adequately to defendants' explanations about what the specific files are and why it was not unreasonable for the files to be deleted and not preserved. This is particularly true with respect to devices, files, and accounts that the individual defendants have described as principally personal in nature. For example, during the hearing on these motions the Court raised the question of whether files that Mr. Crammer claims are personal photos saved in cloud-based storage might nevertheless show up as "deleted" from Mr. Crammer's quarantined laptop upon being removed *from cloud-based storage*, and not from the laptop which may once have been used to access them. BLC did not have a satisfactory answer to the technical question the Court posed, even though it highlights the disappearance of files from a computer that was supposedly quarantined as key evidence of Mr. Crammer's and CLD's intentional destruction of documents. *See* Dkt. No. 174 at 16.

9

In short, the Court finds that defendants' deletion of some files is not, on its own, sufficient to show that any of them failed to take reasonable steps to preserve evidence that they were on notice at the time would be relevant to foreseeable litigation. For these reasons, the Court concludes that BLC has not met its burden to show that any defendant failed to take reasonable steps to preserve ESI relevant to foreseeable litigation after a duty to preserve such evidence arose.

### C. Prejudice to BLC

BLC's claim to have suffered prejudice as a result of defendants' failure to preserve certain files is highly speculative. While the Court appreciates that BLC cannot know precisely what information a deleted file contained, the Court expects at least some discussion about the nature of the information that is missing and its bearing on the case. The forensic examiner produced reports in September 2021 listing specific files by file name and path that he identified as having been deleted. Many of these file names are suggestive of the files' contents. BLC had an opportunity to ask each defendant or its representative questions in deposition regarding the nature of the files and why they were deleted, or to provide declarations attesting to the likely subject matter of the missing files. *See* Dkt. No. 166 at 3; Dkt. No. 167 at 3; Dkt. No. 169 at 4. And yet the record before the Court does not contain this kind of supporting information or testimony. BLC has instead relied almost exclusively on the forensic examiner's reports, without more.

As explained above, BLC's showing of intentional destruction of evidence is not strong. In these circumstances, the Court cannot simply presume that all deleted files would have contained information relevant to BLC's claims and that BLC is therefore prejudiced by their unavailability.

### D. Remedies

Because the Court is not persuaded that any defendant failed to take reasonable steps to preserve ESI that should have been preserved in the anticipation or conduct of litigation or that BLC has been prejudiced by the loss of any such information, BLC is not entitled to any remedies under Rule 37(e). Moreover, to the extent BLC argues that it believes devices and accounts presently exist that defendants have never searched for relevant and responsive ESI, BLC's arguments are untimely.

10

As defendants observe, BLC had reports in September 2021 from the forensic examiner that contain the information on which it now relies in demanding that the individual defendants search for and produce information from additional sources. However, BLC did not demand production of documents from these additional sources until November 16, 2021, when it raised the matter with defendants as a question of spoliation. *See* Dkt. No. 164-2, Ex. 11. This demand should have been made much earlier, and the Court finds that BLC does not provide an adequate justification for the Court to consider the demand now.

**IV. CONCLUSION**

For these reasons, the Court denies BLC's motions for sanctions.

**IT IS SO ORDERED.**

Dated: May 13, 2022

*[signature]*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

11